| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | Hearing Date: May 23, 2018<br>Hearing Time: 3:00 PM |
| In Re:<br><br>3733 97 ST CORONA CORP,<br><br>                      Debtor. | Case No.: 18-41466-cec<br>Chapter 11<br><br>Assigned to:<br>Hon. Carla E. Craig<br>Bankruptcy Judge |

**NOTICE OF MOTION FOR *IN REM* RELIEF FROM AUTOMATIC STAY**

      Please take notice that Arvest Central Mortgage Company f/k/a Central Mortgage Company (the "Creditor"), by the undersigned attorneys, will move this Court on May 23, 2018 at 3:00 PM or as soon thereafter as counsel can be heard, before the Honorable Carla E. Craig whose courtroom is located at the United States Bankruptcy Court, Eastern District of New York, Conrad B. Duberstein Courthouse, 271 Cadman Plaza East, Courtroom 3529, Brooklyn, NY 11201-1800, for an Order (i) pursuant to 11 U.S.C. § 362(d)(4) for *in rem* relief from the automatic stay as to movant's interest in the real property commonly known as 37-33 97TH STREET, CORONA, NEW YORK 11368 (the "Premises") such that any and all future bankruptcy filings by 3733 97 St Corona Corp, Elvis Mata, or any other person or entity with an interest in the Premises shall not operate as a stay against the Creditor and its successors and/or assigns for a period of two years after date of said order, (ii) pursuant to 362(d)(1) for relief from the automatic stay as to Creditor's interest in the Premises, (iii) waiving the fourteen day stay created by Fed. R. Bankr. P. 4001(a)(3) or any other applicable rule, (iv) approving Creditor's request for $1,250.00 in reasonable attorney fees and $181.00 in costs incurred in connection with the motion, and (v) for such other relief as the Court may deem proper.

DATED: April 13, 2018
          Garden City, New York

                            By: */s/Ronald Howard*
                            Ronald Howard, Esq.
                            Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.
                            Attorneys for Creditor
                            100 Garden City Plaza
                            Garden City, NY 11530
                            Telephone 516-222-6200

TO:
3733 97 St Corona Corp
ATTN: Elvis Mata, President
37-33 97th Street
Corona, NY 11368

Elvis Mata
37-33 97th Street
Corona, NY 11368

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

97 Street Realty, Inc.
ATTN: Meir C. Abramov
5308-13th Avenue # 248
Brooklyn, NY 11219

Hon. Carla E. Craig
United States Bankruptcy Court
Eastern District of New York
Conrad B. Duberstein Courthouse
271 Cadman Plaza East
Brooklyn, NY 11201-1800

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────

In Re:                                                              Case No.: 18-41466-cec
                                                                    Chapter 11
3733 97 ST CORONA CORP,
                                                                    Assigned to:
                    Debtor.                                         Hon. Carla E. Craig
                                                                    Bankruptcy Judge
───────────────────────────────────────

## AFFIRMATION IN SUPPORT OF MOTION FOR *IN REM* RELIEF FROM AUTOMATIC STAY

Ronald Howard, Esq. an attorney associated with the firm Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., as counsel to Arvest Central Mortgage Company f/k/a Central Mortgage Company (the "Creditor"), a secured creditor in this case, makes this motion (the "Motion"), for an order (i) pursuant to 11 U.S.C. § 362(d)(4) and Fed. R. Bankr. P. 4001(a) for *in rem* relief from the automatic stay as to the real property commonly known as 37-33 97TH STREET, CORONA, NEW YORK 11368 (the "Premises") such that any and all future bankruptcy filings by 3733 97 St Corona Corp (the "Debtor"), Elvis Mata, or any other person or entity with an interest in the Premises shall not operate as a stay against the Creditor and its successors and/or assigns for a period of two years after date of said order, (ii) pursuant to 362(d)(1) for relief from the automatic stay as to Creditor's interest in the Premises, (iii) waiving the fourteen day stay created by Fed. R. Bankr. P. 4001(a)(3) or any other applicable rule, (iv) approving Creditor's request for $1,250.00 in reasonable attorney fees and $181.00 in costs incurred in connection with the motion, and (v) for such other relief as the Court may deem proper, and affirms the following facts in support of the Creditor's application for relief from the automatic stay:

1

1. On March 16, 2018, 3733 97 St Corona Corp (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code with this Court, and an order for relief was duly entered.

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. § 362(d).

3. The Creditor derives its secured status pursuant to that certain Note and Mortgage dated March 23, 2007, where Amnet Mortgage in Lieu of True Corporate Name American Mortgage Network, Inc. ("Amnet") advanced sums to or for the benefit of Elvis Mata ("Mata") in the original principal amount of $680,000.00, which constitutes a lien against the Premises. On or about April 11, 2008, Amnet assigned the Note and Mortgage to Luminent, who subsequently assigned the Note and Mortgage to Creditor on or about November 16, 2010. Please find a copy of the Note, Mortgage, and related assignments annexed to this motion as **Exhibit A**.

4. Pursuant to the terms and conditions of the Note and Mortgage, upon the failure of Mata to cure any default thereunder, which includes non-payment of amounts due, Creditor is entitled to accelerate the loan balance and foreclose on the Premises.

5. On December 10, 2010, Creditor commenced an action (the "Foreclosure Action") in the Supreme Court of the State of New York County of Queens bearing index no. 30774/10 for foreclosure as to the Premises, naming Mata and other parties as

defendants.  On November 25, 2015, the Honorable Darrell L. Gavrin granted a Judgment of Foreclosure and Sale in favor of Creditor.  A copy of the Judgment of Foreclosure and Sale is annexed to this motion as **Exhibit B**.

6. **Case Nos. 16-43536-cec.**  On or about June 29, 2016, Creditor filed a notice of sale in the Queens County Supreme Court, which set forth August 5, 2016 as the date on which Stephen D. Hans (the "Referee") would conduct a public auction of the Premises.

7. On the morning of the sale, Mata, filed a *pro se* voluntary petition under chapter 13 of Bankruptcy Code with this Court bearing case no. 16-43536-cec, listing the Premises as his address, and an Order of Relief was duly entered.

8. On September 20, 2016, the Clerk's Office submitted a Request for Judicial Determination Concerning Dismissal Pursuant to 11 U.S.C. § 521(i), citing Mata's failure to file schedules of assets and liabilities, a statement of financial affairs, a statement of monthly income and means test calculation, and copies of pay statements.  In addition, the Mata failed to file a plan of reorganization as required under 11 U.S.C. § 1321 and Fed. R. Bankr. P. 3015(b).  The Court dismissed Mata's case on September 27, 2016.

9. **Case No. 17-43612-cec.**  On or about June 21, 2017, Creditor filed a third notice of sale[1] in the Queens County Supreme Court, which set forth July 14, 2017 as the date on which the Referee would conduct a public auction of the Premises.

---

[1] A second notice of sale was filed on or about October 31, 2016, which set forth a sale date of December 16, 2016.  The state court stayed that sale upon granting Mata's order to show cause.

10. On July 13, 2017, one day prior to sale, Mata filed a *pro se* voluntary petition under chapter 13 of Bankruptcy Code with this Court bearing case no. 17-43612-cec, listing the Premises as his address, and an Order of Relief was duly entered.

11. On August 21, 2017, Micael, J. Macco, acting as the Chapter 13 Trustee, filed a motion to dismiss with prejudice. The motion alleged the following:

- Mata had failed to submit pre-confirmation payments to the Trustee.
- Mata had failed to file a chapter 13 plan, certificate of credit counseling, statement of financial affiars, summary of assets and liabilities and certain statistical information, statement of current monthly income and means test, complete set of schedules, and copies of pay statements from employer for the sixty day period preceding filing.
- Mata had failed to provide the Trustee with copies of the previous years's State and Federal Tax Retruns, all filings required under Section 521 and all mandatory disclosure documentation as set forth in LBR 2003-1.
- Mata had failed to appear at the initial section 341 meeting of creditors.

12. The Court dismissed Mata's case on October 9, 2017, with prejudice, prohibiting Mata from filing another petition under chapter 13 or converting a chapter 7 case to a chapter 13 case for a period of one year without consent from the Court.

13.     **Case No. 17-46246-cec.**  On or about November 13, 2017, Creditor filed a fourth notice of sale in the Queens County Supreme Court, which set forth December 1, 2017 as the date on which the Referee would conduct a public auction of the Premises.

14.     On November 27, 2017, four days prior to sale, Mata filed a *pro se* voluntary petition under chapter 7 of Bankruptcy Code with this Court bearing case no. 17-46246-cec, listing the Premises as his address, and an Order of Relief was duly entered.

15.     On January 12, 2018, the Clerk's Office submitted a Request for Judicial Determination Concerning Dismissal Pursuant to 11 U.S.C. § 521(i), citing Mata's failure to file schedules of assets and liabilities, a statement of financial affairs, a statement of monthly income and means test calculation, and copies of pay statements.  The Court dismissed the Mata's case on January 17, 2018.  A copy of the dismissal order, together with the dismissal orders discussed *supra*, is annexed to this motion as **Exhibit C**.

16.     On March 15, 2018, a Certificate of Incorporation was filed with the New York State Department of State, Division of Corporations, to incorporate the Debtor.  A copy of the Division's Entity Information report for the Debtor is annexed to this motion as **Exhibit D**.  As of the date of this motion, no deed granting the Debtor an interest in the Premises has been recorded.[2]

17.     **Case No. 18-41466-cec.**  On or about February 21, 2018, Creditor filed a fifth notice of sale in the Queens County Supreme Court, which set forth March 16, 2018 as the date on which the Referee would conduct a public auction of the Premises.  A copy

---

[2] According to the Automated City Register Information System maintained by New York City Department of Finance (http://a836-acris.nyc.gov/CP/), Mata granted all interest in the Premises to 97 Street Realty Inc., on March 12, 2014, four years before this case was filed.

of the notice of sale, together with copies of the notices of sale discussed *supra*, is annexed to this motion as **Exhibit E.**

18.     On the morning of the sale, the Debtor filed the instant *pro se* voluntary Chapter 11 petition (collectively with the cases discussed *supra*, the "Bankruptcy Cases") as a small business debtor, listing the Premises its principal place of business, and an Order of Relief was duly entered. Question 17 of the petition indicates that Mata is the Debtor's president.

19.     As of the date of this Motion, the Debtor has yet to file the following documents:

- Statement Pursuant to E.D.N.Y. LBR 1073−2(b)
- Corporate Resolution Pursuant to E.D.N.Y LBR 1074−1(a)
- Corporate Ownership Statement Pursuant to Fed. R. Bankr. P. 1007(a)(1)
- Corporate Disclosure Statement Pursuant to Fed. R. Bankr. P. 1073−3
- List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not
- Insiders (Official Form 204) (Signed by Debtor)
- Affidavit Pursuant to E.D.N.Y. LBR 1007−4
- Schedules of Assets and Liabilities
- Declaration Under Penalty of Perjury for Non−Individual Debtors (Official Form 202)
- List of Equity Security Holders and Addresses (Corporation Only)

- Statement of Financial Affairs for Non−Individuals Filing for Bankruptcy (Official Form 207)
- Most recent balance sheet, statement of operations, cash flow statement, and Federal income tax return, or a statement that none of the foregoing have been prepared or filed.

20. A copy of the dockets for the dismissed Bankruptcy Cases is annexed to this motion as **Exhibit F**.

21. According to the Motion for Relief from Stay Worksheet executed by Chris Moore, an Officer with Creditor, and annexed to this motion as **Exhibit G**, as of April 2, 2018, Mata is contractually due for the installment scheduled August 1, 2008. Mata owes $1,127,668.01 on the Note, and according to the Asset Valuation Solutions BPO dated November 8, 2017, annexed to this Motion as **Exhibit H**, the Premises are valued at $1,000,000.00. Furthermore, should the default continue, another payment due May 1, 2018 will also be due at the date this Motion is heard.

22. I certify under penalty of perjury that the foregoing facts are true to the best of my knowledge, information, and belief.

### CREDITOR IS ENTITLED TO IN REM RELIEF FROM THE AUTOMATIC STAY AS TO THE PREMISES UNDER 11 U.S.C. § 362(d)(4)(B)

23. "The cornerstone of consumer bankruptcy is the 'fresh start' that it offers to the 'honest but unfortunate debtor.'" *New York v. Suarez (In re Suarez)*, 367 B.R. 332, 337, 2007 Bankr. LEXIS 1390, 48 Bankr. Ct. Dec. 60 (Bankr. E.D.N.Y. 2007). Nonetheless, "any debtor . . . who files for relief under a rehabilitative chapter of the Bankruptcy Code must proceed in good faith, which is to say must treat his or her

7

creditors in a 'fundamentally fair' manner. *In re Head*, 223 B.R. 648, 652, 1998 Bankr. LEXIS 975, *13, 32 Bankr. Ct. Dec. 1222 (Bankr. W.D.N.Y. 1998).

24.     However, "[t]he filing of repetitive bankruptcy cases to forestall secured creditors from exercising foreclosure rights, and without any intent to comply with basic bankruptcy requirements, is an abuse of process and a violation of the spirit and intent, if not the actual letter, of the Bankruptcy Code." *In re Hughes*, No. 06-32726-SGJ-7, 2007 Bankr. LEXIS 1328, at *41-42 (Bankr. N.D. Tex. Apr. 3, 2007). In such cases, *in rem* relief is appropriate in order to allow a secured creditor to complete the foreclosure process. *See Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz)*, 341 B.R. 371, 384-85 (B.A.P. 1st Cir. 2006), 2006 Bankr. LEXIS 693 (*in rem* relief appropriate where Debtors filed four bankruptcy cases in order to prevent the creditor from completing foreclosure); *In re Selinsky*, 365 B.R. 260 (Bankr. S.D. Fl. 2007) (Court ordered *in rem* relief where the Debtor and her husband's five bankruptcy filings constituted a gross abuse of the bankruptcy process).

25.     Among the amendments to the Bankruptcy Code enacted under the 2005 Bankruptcy Abuse and Consumer Protection Act was section 362(d)(4), which provides the Court with statutory authority to grant *in rem* relief. *In re Montalvo*, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009). The effect of such in *rem relief* is to preclude all future bankruptcy filings by any person or entity with interest in the subject property from operating as an automatic stay against the owner of the property and its successors and/or assigns for a period of two years after the date of the entry of such order. *Id.* Section 362(d)(4)(B) provides as follows:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of [section

creditors in a 'fundamentally fair' manner. *In re Head*, 223 B.R. 648, 652, 1998 Bankr. LEXIS 975, *13, 32 Bankr. Ct. Dec. 1222 (Bankr. W.D.N.Y. 1998).

24.     However, "[t]he filing of repetitive bankruptcy cases to forestall secured creditors from exercising foreclosure rights, and without any intent to comply with basic bankruptcy requirements, is an abuse of process and a violation of the spirit and intent, if not the actual letter, of the Bankruptcy Code." *In re Hughes*, No. 06-32726-SGJ-7, 2007 Bankr. LEXIS 1328, at *41-42 (Bankr. N.D. Tex. Apr. 3, 2007). In such cases, *in rem* relief is appropriate in order to allow a secured creditor to complete the foreclosure process. *See Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz)*, 341 B.R. 371, 384-85 (B.A.P. 1st Cir. 2006), 2006 Bankr. LEXIS 693 (*in rem* relief appropriate where Debtors filed four bankruptcy cases in order to prevent the creditor from completing foreclosure); *In re Selinsky*, 365 B.R. 260 (Bankr. S.D. Fl. 2007) (Court ordered *in rem* relief where the Debtor and her husband's five bankruptcy filings constituted a gross abuse of the bankruptcy process).

25.     Among the amendments to the Bankruptcy Code enacted under the 2005 Bankruptcy Abuse and Consumer Protection Act was section 362(d)(4), which provides the Court with statutory authority to grant *in rem* relief. *In re Montalvo*, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009). The effect of such in *rem relief* is to preclude all future bankruptcy filings by any person or entity with interest in the subject property from operating as an automatic stay against the owner of the property and its successors and/or assigns for a period of two years after the date of the entry of such order. *Id.* Section 362(d)(4)(B) provides as follows:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of [section

362], such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . .

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

26.     A creditor seeking *in rem* relief under 11 U.S.C. § 362(d)(4)(B) as to its interest in property bears the burden of showing that the petition was part of a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcy filings affecting such property. The required statutory "scheme" must include at least two bankruptcy filings. *See In re Van Eck*, 425 B.R. 54, 70 (Bankr. D. Conn. 2010).

27.     Creditor is entitled to *in rem* relief from the automatic stay under 11 U.S.C. § 362(d)(4)(B).

28.     A bankruptcy court can infer the intent to hinder, delay, and defraud creditors from the fact of serial filings alone without holding an evidentiary hearing. *In re Richmond*, 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014), quoting *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012). Moreover, a scheme to hinder, delay, and defraud creditors can be inferred from such serial filings where (i) the bankruptcy cases are commenced on the eve of or shortly before significant events affecting the property, (ii) the petitioners

repeatedly fail to either file or confirm a chapter 13 plan, and (iii) the petitioners otherwise fail to prosecute their bankruptcy cases. *Montalvo*, 416 B.R. at 387.

29. Mata never had the intention of using the Bankruptcy Code to reorganize or discharge debts and obtain a fresh start. In none of the Bankruptcy Cases has Mata ever proposed a plan of reorganization or filed schedules of assets and liabilities, a statement of financial affairs, a statement of current monthly income, or copies of pay statements. Had Mata even the slightest intention to reorganize or discharge his debts, the failure to file documents so essential to the successful prosecution of a bankruptcy case would not be so consistent.

30. In addition, Mata commenced, or caused to be commenced, each of the Bankruptcy Cases within four days of a scheduled foreclosure sale (including two cases filed on the day of sale) only to immediately abandon their proper prosecution. In so doing, he has repeatedly invoked the protections of the automatic stay in bankruptcy for the sole purpose of preventing the consummation of a successful sale of the Premises.

31. The timing of these events was essential to the uninterrupted perpetration of Mata's scheme to delay or hinder Creditor. Because the Court dismissed Mata's two most recent prior Bankruptcy Cases within the preceding 12 months, the creation of an automatic stay would have been precluded by operation of § 362(c)(4)(A)(i) had he commenced a new case in his name before October 9, 2018.[3] The only discernible purpose for the Debtor's incorporation, *one day* prior to the commencement of this case, was to circumvent this anti-abuse rule by allowing a different legal entity with a

---

[3] The Court dismissed the second of the four Bankruptcy Cases, case no. 17-43612-cec, on October 9, 2017. "[I]f a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the [automatic stay] shall not go into effect upon the filing of the later case." 11 U.S.C. § 362(c)(4)(A)(i).

purported interest in the Premises to commence a bankruptcy case, and to once again invoke the automatic stay protections of § 362(a) to force yet another sale cancellation. Consequently, the Debtor's incorporation was a key aspect of Mata's scheme to delay or hinder the Creditor.

32. That Mata's scheme involved multiple bankruptcy filings affecting the Premises in satisfaction of § 362(d)(4)(B) is evident from the fact that each of the four Bankruptcy Case petitions identified the Premises as either the respective debtor's principal residence or principal place of business, and that each of the petitions forced the cancellation of then imminent foreclosure sale. In so doing, Mata has repeatedly invoked the protections of the automatic stay in multiple bankruptcy filings for no purpose other than to prevent the consummation of a successful sale of the Premises.

33. Furthermore, Mata caused this corporate chapter 11 case to be filed *pro se* in violation of a long standing Second Circuit prohibition on *pro se* corporate litigants. *See Sharp v. Bivona*, 304 F. Supp. 2d 357, 364 (E.D.N.Y. 2004) ("[t]here exists a longstanding rule that a corporation may not proceed pro se in federal court, but must appear by an attorney."); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("[s]ince, of necessity, a natural person must represent the corporation in court, we have insisted that that person be an attorney licensed to practice law before our courts.")

34. As a result, Mata has managed to occupy the Premises for nearly ten years at no substantial cost, all while avoiding the effort and expense necessary to properly prosecute a bankruptcy case. Consequently, because Mata's pattern of filing shell bankruptcy petitions on the eves of foreclosure sales has so effectively hindered and

delayed the sale of the Premises, and because the only discernible purpose of the Debtor's incorporation was to enable Mata to continue that pattern, these acts constitute a scheme to hinder, delay, or defraud Creditor involving multiple bankruptcy filings affecting the Premises.

## CREDITOR IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1)

35.     Section 362(d)(1) of the Bankruptcy Code provides in pertinent part that the Court shall grant relief from the stay imposed by Section 362(a) "for cause, including lack of adequate protection of an interest in property..." 11 U.S.C. § 362(d)(1), failure to make post-petition mortgage payments constitutes "cause" to modify the automatic stay. *See In re Taylor*, 151 B.R. 646 (E.D.N.Y.1993); *In re Davis*, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986); *In re Frascatore*, 33 B.R. 687 (Bankr. E.D. Pa. 1983). The party seeking relief from the automatic stay has the initial burden of establishing "cause." *In re Mazzeo,* 167 F.3d 139, 142 (2d Cir. 1999); *In re Godt*, 282 B.R. 577, 584 (E.D.N.Y. 2002). Once the movant establishes a *prima facie* case of cause to lift the stay, the burden shifts to the debtor. *Id.*

36.     The only way the Court can ensure that neither Mata nor any other entity further abuses the Bankruptcy Code by forcing yet another improper postponement of the sale is to grant *in rem* relief from the automatic stay under 11 U.S.C. § 362(d)(4). Thus, the Court should grant Creditor's motion.

37.     Creditor respectfully requests $1,250.00 for reasonable attorney fees and $181.00 in costs incurred in connection with the instant motion, pursuant to the terms of

the Note and Mortgage. The Mortgage provides that Creditor shall be reimbursed for any appropriate amounts, including reasonable attorney's fees, spent to protect Creditor's interest in the Premises, which is secured by the Note and Mortgage.

38. A copy of a proposed Order granting the relief sought by Creditor is annexed to this motion as **Exhibit I.**

**WHEREFORE**, Creditor respectfully requests that an Order be granted

(a) terminating the automatic stay, and effecting *in rem* relief immediately as to Creditor's interest in the Premises under 11 U.S.C. § 362(d)(4)(B);

(b) waiving the fourteen day stay created by Fed. R. Bankr. P. 4001(a)(3) or any other applicable rule;

(c) approving Creditor's request for $1,250.00 in reasonable attorney fees and $181.00 in costs incurred in connection with the instant motion; together with

(d) such other, further, and different relief as the Court may deem just in this matter.

DATED:  April 13, 2018
          Garden City, New York

                              By:  */s/Ronald Howard*
                                 Ronald Howard, Esq.
                                 Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.
                                 Attorneys for Creditor
                                 100 Garden City Plaza
                                 Garden City, NY 11530
                                 Telephone 516-222-6200